### NAGEL, Exrx v FREMONT METAL BODY CO et

Ohio Appeals, 6th Dist, Sandusky Co

No 248.   Decided Oct 6, 1932

KLINGER, J (3rd Dist), sitting for LLOYD, J (6th Dist).

Harry Garn, Fremont, and Culbert & Culbert, Fremont, for plaintiff.

Tyler, Wilson & Rhinefort, Toledo, for The First National. Bank of Fremont.

Stahl, Stahl & Stahl, Fremont, for other defendants.

WILLIAMS, J.

As John M. Sherman, who conducted the transaction on behalf of the bank at the time the last note and mortgage for $6,500 were executed and delivered, died prior to the trial of the case in the court below, there is no evidence as to what transpired when this note and mortgage were given,

except that presented by the mortgage itself. As the mortgage of $12,000 was a matter of record at the time of the execution and delivery of the last mortgage of $6,500, such record would be constructive notice to The First National Bank of the existence thereof and mere silence on the part of Frank Nagel would not, of itself, work an estoppel which would bar his right to assert a lien under his mortgage.

On the other hand, by the great weight of authority, any misrepresentation of fact by Nagel which misled the bank would work an estoppel, even though there was constructive knowledge of the bank by reason of the recording of the prior mortgage. The rule is thus stated in 21 C.J., pages 1130 and 1131, §131, as follows:

"A public record is an available means of information as to questions of title, and one who does not take advantage of it can not claim an estoppel against one who merely fails to furnish such information. And it has been held that he will not be estopped by his silence, although he may know or be informed that others are negotiating for rights and interests in property bound by his title of record, as he is under no obligations to warn or apprise them of that which the record discloses, but there is authority to the contrary.

"There are, however, cases in which the representation, by actively misleading the person setting up the estoppel and preventing him from having recourse to available means of information, has been held to excuse his failure to inform himself of the facts, even in the case of constructive notice by matter of record."

It is true that this authority does not go further than stating that it is held in some cases that active misrepresentation of fact will have this effect, but an examination of the cases leads us to the conclusion that the rule as stated by us above is correct.

An excellent monograph covering this subject may be found in 50 A.L.R., 668. We especially call attention to the language used by this compiler and the cases cited at pages 744 to 759, inclusive. At page 748 of this monograph, the author, in stating the limitations upon the rule that ordinarily the failure of a person to disclose an interest which he has in real estate to one purchasing or taking a mortgage thereon, will not be estopped where such interest is disclosed by an instrument duly recorded, quotes with approval from Porter v Wheeler, 105 Ala., 451; 17 So., 221, to show

as a corollary to that rule that estoppel does apply notwithstanding constructive notice by record where the person claimed to be estopped does some affirmative act which misleads the person claiming the estoppel. The language quoted is as follows:

"The law is well settled that one having a title of record, so long as he may do no affirmative act to mislead or deceive, is under no further duty to those who may acquire subsequent rights, and will not be barred from the assertion of this title. He may know or be informed that others are proposing or negotiating for rights and interests in property bound by his title of record; he is under no obligation to inquire for or hunt them up, and warn or apprise them of that which the record discloses, and it is their duty to ascertain."

Applying these principles to the case at bar, we have no hesitation in stating that in the absence of any explanation or further proof, the signing and acknowledgment of the mortgage containing a representation that the property mortgaged was unencumbered amounted to an affirmative act which was well calculated to mislead and did mislead the mortgage. We think the situation is not materially different from one where the mortgagor represents in a letter to the mortgagee the same facts.

It is true that at the time that Nagel executed and acknowledged the mortgage, he was not the sole owner of the $12,000 mortgage. He was, in fact, one of the mortgagees and owned an interest therein and it was pledged as collateral to the Liberty Bank. We think the rule to be applied in this case is no different than that applicable where he is the only mortgagee named in the mortgage, and the sole owner and holder thereof at the time and the same unhypothecated as collateral.

Nagel purchased the Swint note and mortgage of $12,000 from the Liberty Bank after the note of $12,000 and the Swint note were due and payable. It is true that if, in collecting the Swint note, the bank found it necessary to foreclose the mortgage deposited as collateral, that mortgage would be prior in time to the mortgage of The First National Bank. However, in view of the fact that Nagel was a party to all the transactions relating to the $12,000 note and mortgage and the Swint note, and participated actively therein, his executrix can not now claim that he acquired the same right of priority in the mortgage as

the Liberty Bank would have had upon foreclosure by it. Nagel merely paid off the indebtedness to the Liberty Bank to protect his liability to that bank growing out of his guaranty of the note.

This court concludes that the executrix of the estate of Nagel is estopped from asserting the priority of the $12,000 mortgage over the mortgage of The First National Bank, and we find that that bank has the first and best lien on the premises covered by its mortgage.

Decree accordingly.

RICHARDS and KLINGER, JJ, concur.